UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

MANUEL GERALDO,

Defendant.

11 Cr. 1032-68 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

On October 29, 2020, the Court received a letter from defendant Manuel Geraldo inquiring about the status of a motion he had filed seeking relief under 28 U.S.C. § 2255. Although the Government had responded to that motion, Dkt. 2379, and Geraldo filed a reply, Dkt. 2389, the Court appears never to have received Mr. Geraldo's opening motion, which was not docketed in this case.

Since receiving Geraldo's October 29, 2020 letter, the Court has, with the assistance of the Government, obtained a copy of that motion, which is attached to this order. The Court will address the motion in due course.

The Clerk of Court is respectfully directed to mail a copy of this order to Geraldo.

SO ORDERED.

_Paul A. Engelmayer_
PAUL A. ENGELMAYER
United States District Judge

Dated: December 9, 2020
New York, New York

## CERTIFICATE OF SERVICE

I Manuel Geraldo hereby certify that on this 14th day of November 2017 I did place the enclosed motion for relief in the prison mailing system addressed to the following;

U.S. District Court
Court Clerk

U.S. Attorneys Office
one St. Andrews Place
NewYork, N.Y. 10007

Signed under the penalty of perjury
this 14 day of November 2017

Respectfully, Submitted;

x☐Manuel Geraldo

Manuel Geraldo

AO 243
(Rev. 10/07)

# Motion to Vacate, Set Aside, or Correct a Sentence
## By a Person in Federal Custody

### (Motion Under 28 U.S.C. § 2255)

### Instructions

1. To use this form, you must be a person who is serving a sentence under a judgment against you in a federal court. You are asking for relief from the conviction or the sentence. This form is your motion for relief.

2. You must file the form in the United States district court that entered the judgment that you are challenging. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file the motion in the federal court that entered that judgment.

3. Make sure the form is typed or neatly written.

4. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5. Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or arguments, you must submit them in a separate memorandum.

6. If you cannot pay for the costs of this motion (such as costs for an attorney or transcripts), you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you.

7. In this motion, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different judge or division (either in the same district or in a different district), you must file a separate motion.

8. When you have completed the form, send the original and two copies to the Clerk of the United States District Court at this address:

   Clerk, United States District Court for _____
   Address
   City, State  Zip Code

9. **CAUTION: You must include in this motion <u>all</u> the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this motion, you may be barred from presenting additional grounds at a later date.**

10. <u>CAPITAL CASES:</u> If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| United States District Court | District _Southern District_ | |
|---|---|---|
| Name (under which you were convicted): _Manuel Geraldo_ | | Docket or Case No.: _11 Cr. 1032 (PAE)_ |
| Place of Confinement: _F.C.I. Ray Brook_ | | Prisoner No.: _67717-054_ |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) | |
| | v. _MANUEL GERALDO_ | |

## MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   _Southern District of New York_
   _New York, New York 12977_

   (b) Criminal docket or case number (if you know): _11 Cr. 1032 (PAE)_

2. (a) Date of the judgment of conviction (if you know): _10-29-15_

   (b) Date of sentencing: _10-29-15_

3. Length of sentence: _300 months_

4. Nature of crime (all counts): _18 U.S.C. 3 1162 (d)._

5. (a) What was your plea? (Check one)

   (1)   Not guilty ☐           (2)   Guilty ☑           (3)   Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count
   or indictment, what did you plead guilty to and what did you plead not guilty to? _N/A_

6. If you went to trial, what kind of trial did you have? (Check one)      Jury ☐      Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes ☐   No ☑

8. Did you appeal from the judgment of conviction?   Yes ☑   No ☐

9. If you did appeal, answer the following: Second Circuit Court of Appeals

    (a) Name of court: Second Circuit

    (b) Docket or case number (if you know): 15 - 3680 - cr

    (c) Result: Affirmed

    (d) Date of result (if you know): On April 19, 2017 conviction was affirmed.

    (e) Citation to the case (if you know): Unsure

    (f) Grounds raised: Above Guidelines sentence was unreasonable.

    (g) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐   No ☑

       If "Yes," answer the following: N/A

       (1) Docket or case number (if you know): N/A

       (2) Result: N/A

       (3) Date of result (if you know): N/A

       (4) Citation to the case (if you know): N/A

       (5) Grounds raised: N/A

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

    Yes ☐   No ☑

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: N/A

       (2) Docket or case number (if you know): N/A

       (3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ❏  No ☑

(7) Result: N/A

(8) Date of result (if you know): N/A

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: N/A

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ❏  No ❏

(7) Result: N/A

(8) Date of result (if you know): N/A

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application? N/A

(1) First petition:   Yes ❏   No ❏

(2) Second petition:   Yes ❏   No ❏

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: N/A

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

**GROUND ONE:** I.A.C.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Memorandum of Law attached.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☑

(2) If you did not raise this issue in your direct appeal, explain why: I.A.C. Should be raised in a §2255 Petition.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☑

(2) If your answer to Question (c)(1) is "Yes," state: N/A

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: The issue deals with I.A.C. issue and should be raised in a §2255.

**GROUND TWO:** I.A.C.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Please See Memorandum of Law

(b) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ☑

    (2) If you did not raise this issue in your direct appeal, explain why:

        I.A.C. issue

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑   No ☑

    (2) If your answer to Question (c)(1) is "Yes," state: N/A

    Type of motion or petition: N/A

    Name and location of the court where the motion or petition was filed: N/A

    Docket or case number (if you know): N/A

    Date of the court's decision: N/A

    Result (attach a copy of the court's opinion or order, if available): N/A

    (3) Did you receive a hearing on your motion, petition, or application? N/A

        Yes ❑   No ❑

    (4) Did you appeal from the denial of your motion, petition, or application? N/A

        Yes ❑   No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? N/A

        Yes ❑   No ❑

    (6) If your answer to Question (c)(4) is "Yes," state: N/A

    Name and location of the court where the appeal was filed: N/A

    Docket or case number (if you know): N/A

    Date of the court's decision: N/A

    Result (attach a copy of the court's opinion or order, if available): N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: I.A.C. should be raised in 3225s.

**GROUND THREE:** I.A.C.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Please see memorandum of Law.

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

I.A.C. claim

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☑

(2) If your answer to Question (c)(1) is "Yes," state: N/A

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed:  N/A

Docket or case number (if you know): N/A

Date of the court's decision:  N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

(3) Did you receive a hearing on your motion, petition, or application? N/A

Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application? N/A

Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? N/A

Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state: N/A

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: I.A.C. should be raised in § 2255

**GROUND FOUR:** N/A

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

N/A

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑  No ❑

    (2) If you did not raise this issue in your direct appeal, explain why:


(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑  No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):


    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑   No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑   No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑   No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N/A

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: Grounds 1, 2, and 3. All deal with I.A.C. Claims.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?     Yes ☐   No ☑
If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. None

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:
   (a) At preliminary hearing: Gary S. Villanueva 11 Park Place, Suite 1601 New York, New York 10007 (212) 219-0100
   (b) At arraignment and plea: ''             ''              ''            ''

   (c) At trial:   ''

   (d) At sentencing:           ''            ''          ''       ''

(e) On appeal:

(f) In any post-conviction proceeding: N|A

(g) On appeal from any ruling against you in a post-conviction proceeding: N|A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?      Yes ❑ No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?      Yes ❑ No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future: N|A

(b) Give the date the other sentence was imposed: N|A

(c) Give the length of the other sentence: N|A

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?      Yes ❑   No ❑ N|A

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.* N/A

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief: _See Memorandum_

or any other relief to which movant may be entitled.

_Pro-se_
_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct
and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on
_____ (month, date, year).

Executed (signed) on _November 14, 2017_ (date).

_Manuel Geraldo_
_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not
signing this motion.

IN THE UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF NEW YORK

---

MANUEL GERALDO

    Petitioner,

  -VS-

UNITED STATES OF AMERICA

    Respondent.

---

Case NO: 11 CR 1032-68 (PAE)

Hon. Paul A. Engelmayer

---

## MEMORANDUM OF LAW IN SUPPORT OF MANUEL GERALDO'S

## MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255

---

Petitioner Manuel Geraldo moves this court pro-se for an order granting him relief pursuant to 28 U.S.C. § 2255.

### CASE SUMMARY

Manuel Geraldo was arrested, and charged with seventy eight defendants who were alleged to be members of the Bronx Trinitarios. He was charged with various counts related to drug distribution, and assault among others. As a result of those charges Mr. Geraldo was represented by Gary S. Villanueva.

Counsel for Mr. Geraldo engaged in plea negotiations with the government on his behalf. As a result of those negotiations Geraldo

entered a plea of guilt on December 29, 2014 to violating 18 U.S.C. § 1962(d). On July 13, 2015 this court held a Fatico hearing. The court issued a decision that placed Mr. Geraldo in a position exposing him to advisory guideline range of 210-262 months. On December 29, 2015 the court held a sentencing hearing, and imposed a term of 320 months with five years supervision and a $100.00 special assessment.

Mr. Geraldo filed a timely notice of appeal through counsel. An appeal was filed with the Second Circuit. On April 19, 2017 the Second Circuit affirmed Mr. Geraldo's conviction, and sentence in all respects. This motion pursuant to 28 U.S.C. § 2255 now follows

## GROUND ONE

### MR. GERALDO WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF COUNSELS FAILURES AND DEFICIENT PERFORMANCE DURING THE PLEA BARGAINING STAGE AND DURING THE PRE-TRIAL PHASE OF THIS CASE.

A. Counsel failed to know the law, facts, and circumstances of Mr. Geraldo's case which would have aided him during the plea negotiation process in this case.

## I. LEGAL PRINCIPLES

The legal standard governing claims involving the deprivation of the Sixth Amendment Right to the effective assistance of counsel are governed by **STRICKLAND V. WASHINGTON**, 466 U.S. 668 (1984), where the Supreme Court held that to prove such a claim, a defendant must show that : (1) "counsels representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsels unprofessional errors the result of the proceeding would have been different. **Id** @ 694. **PHAM V. UNITED STATES**, 317 F.3d 178, 182 (2010); **UNITED STATES V. GORDON**, 156 F.3d 376, 380-81 (2d Cir. 1998).

The Sixth Amendment guarantees a defendant the right to have counsel present at all "critical stages," of the criminal proceedings **MONTEJO V. LOUISIAN**, 556 U.S. 778, 786, 129 S.Ct. 2079 (2009). The Supreme Court in **LAFLER V. COOPER**, 556 U.S. **156**, 132 S.Ct. 1376 (2012), and **MISSOURI V. FREY**, 566 U.S. **134**, 132 S.Ct. 1399 (2012) and **PADILLA V. KENTUCKY**, 559 U.S. **356**, 130 S.Ct. 1437 (2010), found that defendants have a Sixth Amendment right to counsel, a right that extends to the plea bargaining process. In **LAFLER**, writing for 5-4 majority Justice Kennedy stated, "The Sixth Amendment requires effective assistance of counsel at all critical stages of a criminal proceeding. Its protections are not designed simply to protect the trial, even though "counsels absence [Iin these stages] may derogate from the accused's rights to a fair trial." **UNITED STATES V. WADE**, 388 U.S. 218, 226 (1967). The Constitutional guarantee applies to **pretrial critical stages** that are part of the whole course of a criminal proceeding, a proceeding **in which defendants cannot be presumed to make critical decisions without**

(3)

**counsels advise**.

Furthermore, the court made clear in **PADILLA**, that "the negotiation of a plea bargain **is** a "critical stage" of litigation for purposes of the Sixth Amendment Right to effective assistance of counsel." 559 U.S. @ 370, 130 S.Ct. 1473 (2010).

## II. ANALYSIS

### STRICKLANDs 1st Prong-Deficient Performance

This is a case in which Mr. Geraldo relied on counsels advise in deciding whether or not to accept the governments plea offer. Counsel relayed the governments offer to Mr. Geraldo informing him that based on the facts of the case he was facing a sentencing exposure of 210-262 months imprisonment. This was after discussions with counsel in which explained that the law, and facts demonstrated that Geraldos actions fell into the second degree murder category, (Exhibit A).

As part of the plea agreement there was a cavet wherein the plea agreement left open the issue of whether the underlying murder qualified as a first-degree or second-degree murder. During plea negotiations with counsel Mr. Geraldo expressed his concerns regarding the issue concerning whether the underlying murder was first or second degree conduct, (Exhibit A). Counsel assured Mr. Geraldo that the law, and facts were on his side, and that the issue would be heard at a later Fatico hearing. Counsel went over the guidelines with Mr. Geraldo and told him that his sentencing exposure would be 210-262 months, and that he would likely be

sentenced to a term in the neighborhood of 240 months. (Exhibit A).
Counsel went even further and assured Mr. Geraldo that the sentence
would not exceed the 262 months. In fact counsel told Geraldo that
he would not be sentenced to any more then that 262 months, and
"that he could reasonably expect a sentence of about 20 years."
(Exhibit A).

Geraldo made a decision to accept that government offer based on
what his attorney told him. Here, that information from counsel was
incorrect as the court imposed a term of 320 months imprisonment.
Mr. Geraldo was entitled to rely on what his attorney told him in
deciding how to deal with the governments plea offer.

"The negotiation of a plea bargain is a critical phase of
litigation for the purposes of the Sixth Amendment right to
effective assistance of counsel." PADILLA @ 356 (2010). When
considering whether to plead guilty or proceed to trial a defendant
should be aware of the relevant circumstances and the likely
consequences of his decision so that he can make an intelligent
choice." UNITED STATES V. RIVAS-LOPEZ, 678 F.3d 353, 356-57 (5th
Cir. 2012).

the purpose of the Sixth Amendment guarantee of counsel is to
ensure that defendants have "effective assistance" of counsel, that
is "the assistance necessary to justify reliance on the outcome of
the proceeding STRICKLAND, 466 U.S. @ 691-92. counsels function as
assistant to the defendant derive the "overarching duty to advocate
the defendants cause," and the more particular duties to consult
with the defendant or important decisions, and to keep the defendant
informed of important developments in the course of the prosecution.

POWELL V. ALABAMA, 287 U.S. 45, @ 68-69. The adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." ANDERS V. CALIFORNIA, 386 U.S. 738, 743, 87 S.Ct. 1396 (1967). The Supreme Court has further held that a defendant, "requires the guiding hand of counsel at **every step** in the proceedings against him." POWELL V. ALABAMA, Supra, @ 69.

Mr. Geraldo did not have the guiding hand of counsel at the most "critical stage" of the criminal process, nor did he have counsel advocate his cause during the plea negotiation process. Here, Mr. Geraldo was involved in a very serious case, and facing a very significant sentence. Counsel not only gave Mr. Geraldo faulty legal advice, but also did not advocate his cause in the manner in which he should have done. This is a case in which counsel could have, and quite frankly should have negotiated for an 11(c)(1)(c) binding plea.

In BURT V. TITLOW, _____U.S. _____, 134 S.Ct. 10 (2013), Justice Sotomayor in her concurring opinion stated, "Regardless of whether a defendant asserts [Her] innocents (or admits her guilt her counsel must make an independent examination of the facts, circumstances, pleadings and laws involved and then . . . offer his informed opinion as to what plea should be entered." VONMOLTKE V. GILLIES, 332 U.S. 708, 721 68 S.Ct. 316, 92 L.3d 309 (1948), (plurality opinion). A defendant possesses "the ultimate authority" to determine her plea. FLORIDA V. NIXON 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed 2d 565 (2004), But a lawyer must abide by his clients decision in this respect only after having provided the client with

compet and **fully informed advice**, including an analysis of the risks that the client would face in proceeding to trial. Given our recognition that a defendants proclamation of innocence does not relieve counsel of his normal responsibilities," ante @ 8, our further observation that such a proclamation may affect the advice (187 L.Ed. 2d 360) counsel gives." ibid., states only the obvious: that a lawyers advice will always reflect the objectives of the representation as determined by the **adequatly informed client**."

Was Mr. Geraldo an adequatly informed client? CERTAINLY NOT! The Model Rules of Professional Conduct provide that a "lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Model Rules of Professional Conduct Rule 1.4(b)(1995). In this vain the Second Circuit has held, A "closely related duty is that defense counsel must give the client the benefit of counsel professional advice on this crucial decision of whether to plead guilty." **PURDY V. UNITED STATES**, 208 F.3d 41, 44 (2nd Cir. 2000). Additionally, the Supreme Court in **LAFLER**, also held, "If a plea bargain has been offered a defendant has the right to effective assistance of counsel in deciding to accept it." The Supreme Court in **LAFLER** also held, defendants cannot be presumed to make critical decisions related to a plea offer without counsels advice.

Here it is clear that Mr. Geraldo was not given the Constitutionally required advice that he was entitled to during the plea negotiation process. It is also clear that counsel did not advocate Mr. Geraldos cause for a binding plea offer. The plea offer that counsel secured exposed Mr. Geraldo to what could have been a

(7)

life sentence, and certainly subjected him to a sentence far over what was relayed to him. Thus, counsel did not perform effectively under prevailing professional norms.

## B. STRICKLANDs Second Prong-Prejudice

As an initial matter it must be noted that the standard of proof that a petitioner must meet to make out his claim is a "reasonable probability,"which the Supreme Court has defined as follows;

ㅣIA] reasonable probability is a probability sufficient to undermine the confidence in the outcome." **STRICKLAND** @ 694; see also **NIX V. WHITESIDE**, 475 U.S. 157, 175 (1986) "reasonable probability standard is less demanding than the perponderance standard." **PORTER V. MCCOLLUM**, 558 U.S. 30, (2009), "we do not require a defendant to show that counsel's deficient conduct more likely that not altered the outcome of his penalty proceeding." What the courts have stressed is important in evaluating ineffective assistance of counsel claims and the prejudice thereof where plea bargaining is at issue is whether the accused attorney provided "competent advice," to his client as to whether to accept the plea." **LAFLER** Supra. In the context of pleas, a defendant must show that the outcome of the plea process would have been different with competent advice."

Was Mr. Geraldo prejudiced by counsels performance? had counsel sought an 11(c)(1)(c) binding plea would the outcome of the plea process been different? Certainly, had counsel told Mr. Geraldo that he could be sentenced to life by pleading guilty rather than at most 262 months, he would have requested counsel engage in further

negotiations for a binding plea.

Generally, a defendant suffers prejudice if there is a "reasonable probability," that his reliance on counsels ineffective assistance affected the outcome of the proceedings. Accord **MASK V. MCGINNS**, 233 F.3d 132, 140 (2d Cir. 2000), "A petitioner need only show that but for counsels errors there was a "reasonable probability," that the result of the plea bargaining process would have been different. A significant sentencing disparity in combination with the defendants statement of his intention IIto have pled guilty] is sufficient to support a prejudice finding." **UNITED STATES V. PHAM**, 317 F. 3d 178, (2nd Cir. 2003) "Ninety-Seven" (97) percent of federal convictions, and ninety-four (94) percent of state convictions are the result of guilty pleas," **FRYE** Supra. the reality is that almost all criminal defendants plead guilty when given correct legal advice to accept the prosecutions offer. See also Bibas Protection 99 Cal. L. Rev. 1117, 1138 (2011), "The expected post trial sentence is imposed in only a few percent of cases. It is like the sticker price for cars: only an ignorant, ill advised consumer would view full price as the norm and anything less a bargain. see also **FRYE**, "**If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.** If that right is denied, prejudice can be shown if loss of the plea opportunity let to a trial resulting in a conviction on more charges, or the imposition of a more severe sentence."

Here Mr. Geraldo received no benefit for his bargain he got the sticker price, and in fact ended up with a sentence that actually

superseeded the sticker price. His bargain was for 210-262 months imprisonment. In the end he was exactly what the Supreme Court described in LAFLER and FRYE an ignorant, and ill advised [consumer] who paid more that the full price. Mr. Geraldo recieved nothing for giving up his constitutional right to trial. This court should find that counsel was ineffective during the plea negotiation process in this case, and or in the alternative hold a hearing for further fact finding.

## CONCLUSION

Mr. Geraldo has demonstrated that counsel failed under both prongs of STRICKLAND. Thus, this court should grant Mr. Geraldos motion for relief as to Ground One, and remand the case for further fact finding.

## GROUND TWO

MR. GERALDO WAS DENIED HIS

SIXTH AMENDMENT RIGHT TO

EFFECTIVE ASSISTANCE OF

COUNSEL AS A RESULT OF COUNSELS

FAILURE TO DO A PROPER INVESTIGATION

INTO MR. GERALDOS MENTAL HEALTH,

AND PETITION THE COURT FOR A

COMPETENCY HEARING.

A. Counsel failed to do a proper investigation into Mr. Geraldos mental competency despite his assurances to have Geraldo interviewed

by mental health experts. Counsels failure in this regard prevented counsel from filing the appropriate motions to the court.

## I. APPLICABLE LEGAL PRINCIPLES

To prove **ineffective** assistance of counsel, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness" and "must demonstrate a reasonable probability that, bit for counsel's unprofessional errors, the result of the proceeding would have been different." HARRINGTON, 562 U.S. @ 104 (internal quotation marks omitted) (quoting **STRICKLAND V. WASHINGTON**, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984)); **accord PHAM V. UNITED STATES**, 317 F.3d 178. 182 (2d Cir. 2010); **UNITED STATES V. BROWN**, 632 F.3d 104, 112 (2d Cir. 2010); see also **MASSARO V. UNITED STATES**, 538 U.S. 500, 505, 123 S.Ct. 1690, 155 L.Ed. 2d 714 (2003) ("[A] defendant claiming **ineffective** counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial."). In evaluating the first prong - whether counsel's performance fell below an objective standard of reasonableness - "[j]udicial scrutiny . . . must be highly deferential," and the petitioner must overcome the "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." BELL V. CONE, 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed. 2d 914 (2002) (alteration in original) (internal quotation marks omitted) (quoting STRICKLAND, 466 U.S. @ 689); see DUNHAM V. TRAVIS, 313 F.3d. 724, 730 (2d Cir. 2002) (according counsel a presumption of competence). This analysis

requires a court to "affirmatively entertain the range of possible reasons [[petitioner]'s counsel may have had for proceeding as they did." CULLEN V. PINHOLSTER, 563 U.S. 170, 196, 131 S.Ct. 1388, 179 L.Ed. 2d 557 (2011) (citations and internal marks omitted); accord JACKSON V. CONWAY, 763 F.3d 115, 152-53 (2d Cir. 2014).

The second prong requires a show of prejudice. To satisfy this prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." STRICKLAND, 466 U.S. @ 694; accord TAVAREZ V. LARKIN, 814 F.3d 644, 648 (2d Cir. 2016). With respect to the second prong, the Second Circuit generally "requires some objective evidence other then defendant's assertions to establish prejudice." PHAM, 317 F.3d @ 182 (citing UNITED STATES V. GORDON, 156 F.3d 376, 380-81 (2d Cir. 1998) (per curiam)); accord MELO V. UNITED STATES, 825 F. Supp. 2d 457, 462 (S.D.N.Y. 2011).

## II. ANALYSIS

Counsel met with Mr. Geraldo prior to his entering of the plea in this case. During these meetings counsel told Mr. Geraldo that he was going to have him evaluated by a mental health expert, and that he was going to have counsels investigator meet with Geraldo, (Exhibit A). Counsel never had his investigator, nor the mental health expert meet with Geraldo.

Despite telling Mr. Geraldo how important it was for him to meet

with both counsel never followed through, (Exhibit A). However, after Mr. Geraldo entered a plea and appeared for sentencing counsel Gary S. Villanueva then made arguments to the court regarding Mr. Geraldos mental health issues. This was also supported by counsels appellant brief, (Exhibit B). In that brief counsel wrote;

". . . the sentencing court refused to consider appellants persistent disability and, more importantly, its impairment of his judgment."

". . . The court summarily dismissed appellants arguments and the voluminous academic records and reports documenting his diminished intellectual capacity and its detrimental impact, along with immaturity, on his judgement."

"Even had appellant sought a downward departure under the strict guidelines regime - which he did not - he would not have been required to demonstrate **that his disability** - prevented [lhim] from distinguishing between right or wrong."

When did counsel learn of this information pre plea or post plea of guilt? should counsel have had Mr. Geraldo examined by a mental health expert? Had he done so would he have had reason to make a request for a competency hearing? Did Geraldo understand the nature of the proceedings? These are questions that have been left unanswered, as a result of counsels failures during the pre-trial stages of this case. There was clearly an issue with Mr. Geraldo's mental health, the only problem was counsel did not address it at the appropriate time.

The two cases that set forth the Constitution's "mental competence" standard, <u>DUSKY V. UNITED STATES</u>, 362 U.S. 402, 80 S.Ct.

788, 4 L.Ed. 2d 824 (1960) (per curiam), and **DROPE V. MISSOURI**, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed. 2d 103(1975), specify that the Constitution does not permit trial of an individual who lacks "mental competency." **DUSKY** defines the competency standard as including both (1) "whether" the defendant has "a rational as well as factual understanding of the proceedings against him" and (2)whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." 362 U.S., @ 402, 80 S.Ct. 788 (emphasis added; internal quotation marks omitted). **DRAPE** repeats that standard, stating that it "has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defence may not be subject to a trial." 420 U.S., @ 171, 95 S.Ct. 896 (emphasis added). **INDIANA V. EDWARDS**, 554 U.S. 164, 169-70, 128 S.Ct. 2379, 171 L.Ed. 2d 345 (2008).

Lack of mental competence to stand trial must be demonstrated by a preponderance of the evidence, and the burden of proof may be placed upon the party asserting incompetence. See **MEDINA V. CALIFORNIA**, 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed. 2d 353 (1992). Nonetheless, where the record establishes that a defendant's "present sanity" "was very much in issue" at trial and that ample evidence of incompetency was introduced, the court's failure to sua sponte inquire as to the defendant's mental competency and to order a hearing may work to "deprive [the defendant] of his constitutional right to a fair trial." **PATE V. ROBINSON**, 383 U.S. 375, 384-85, 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966).

(14)

The Due Process Clause does not require a competency hearing in every case; a hearing is required only if the court has "reasonable cause" to believe that the defendant has a mental defect rendering him incompetent. **UNITED STATES V. NICHOLS**, 56 F.3d 403, 414 (2d Cir. 1995); see **PATE V. ROBINSON**, 383 U.S. 375, 376 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966) (holding that the failure of a trial court to hold a competency hearing sue sponte may violate due process if there is sufficient evidence to cast doubt upon a defendant's competency). There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." **SILVERSTEIN V. HENDERSON**, 706 F.2d 361, 369 (2d Cir. 1983) (quoting **DROPE V. MISSOURI**, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed. 2d 103 (1975)). "Reviewing courts should consider the indicia of competence that were before the trial judge, which may include a defendant's history of **erratic or irrational behavior,** bizarre courtroom conduct, **defense counsel's expression of doubt about the client's competence**, or **medical report's**" **SMITH V. ROCK**, 554 F. Supp. 2d 505, 519 (S.D.N.Y. 2008) (citations omitted).

Here, it was defense counsel who told Geraldo he needed to be examined by an expert, and it was counsel who argued far to little, and far to late that Mr. Geraldo had mental health deficiencies. This issue leads directly to whether, or not Mr. Geraldo was competent enough to appreciate the consequences of pleading guilty.

"In addition to determining that a defendant who seeks to plead guilty . . . is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." **GODINEZ**, 509 U.S. @ 400 (emphasis added) (citing **PARKE V. RALEY**, 506

U.S. 20, 28-29, 113 S.Ct. 517, 121 L.Ed. 2d 391 (1992)). "In this sense there is a 'hightened' standard for pleading guilty . . . but it is not a heightened standard of competence." **GODINEZ**, 509 U.S. @ 400-01 (footnote omitted). Even though the standard used to determine whether a defendant can stand trial and can enter a guilty plea is the same, the court must determine whether defendant appreciated the consequences of his plea:

The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings. See **DROPE V. MISSOURI**, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed. 2d 103 (1975) (defendant is incompetent if he "lacks the capacity to understand the nature and object of the proceedings against him") (emphasis added). The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually does understand is uncoerced. See **FARETTA V. CALIFORNIA**, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed. 2d 562 (1975) (defendant waiving counsel must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open'") (quoting **ADAMS V. UNITED STATES**, ex rel. **MCCANN**, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)); **BOYKIN V. ALABAMA**, 395 U.S. @244 (defendant pleading guilty must have "a full understanding of what the plea connotes and of its consequences"). Id @ 401 n.12 (emphasis added) (citations altered).

Courts must "exercise the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its

consequences." SADDLER V. UNITED STATES, 531 F.2d 83, 85-86 (2d Cir. 1976) (internal quotation marks and citation omitted); VALLE-IGLESIAS V. UNITED STATES, No. 10-CV-3223, 2013 U.S. Dist. LEXIS 80595, 2013 WL 2470657, @ *7 (E.D.N.Y. June 7, 2013.) "The Judge must satisfy himself that the defendant has the mental capacity to make reasoned choice among the alternatives presented." SADDLER, 531 F.2d @ 86 (internal quotation marks omitted).

Here, counsel found it sufficient enough to argue at sentencing and on appeal that the district court should have departed due to Mr. Geraldo's mental health issues, yet he never moved to have him examined, nor did he request a competency hearing prior to allowing his client to plead guilty. Are those prevailing professional norms? It certainly is not what the framers intended. Had Mr. Geraldo been examined we submit that the findings would have indicated that he had the mental capacity of a thirteen year old child. And quite frankly this court would have likely been astonished by what experts would have found.

Counsel failed to investigate the facts related to Mr. Geraldo's mental health, and he was clearly prejudiced by that failure.

Pursuant to 18 U.S.C. §4241, a district court must hold a hearing to determine a defendant's competency, on either on motion of either party or sua sponte, where there is "reasonable cause" to believe that the defendant may presently be suffering from mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him of to assist properly in his defense." 18 U.S.C. §4241(a); See DROPE V. MISSOURI, 420 U.S. 162, 171 (1975); DUSKY V.

UNITED STATES, 362 U.S. 402, 402 (1960) (per curiam).

Again this case is a text-book example of what 18 U.S.C. §4241(a), DROPE and DUSKY stand for. It is hard to imagine a better case than Mr. Geraldo's as to why counsel should have moved the court for a mental health evaluation and competency hearing.

In REYNOLDS V. NORRIS, 86 F.3d 796, 800 (8th Cir. 1996), the Eighth Circuit held, "that a court must hold a hearing either on a parties motion or sua sponte, whenever evidence rises a "sufficient doubt" about the mental competency of an accused to stand trial). Before the competency hearing the court may order a mental health examination and the filing of a psychiatric or psychological report, and it may commit the defendant to a proper institution for up to thirty days for that examination. 18 U.S.C. §4241(b) and 4247(b).

Many factors inform a courts inquiry as to whether it has "reasonable cause" to hold a competency hearing. DROPE @ 180. These factors often include review of psychiatric records. See UNITED STATES V. QUINTIERI, 306 F.3d 1217, 1233 (2nd Cir. 2002). Though appellate courts consider a district court's observations of defendant's demeanor during proceedings, UNITED STATES V. VAMOS, 797 F.2d 1146, 1150 (2nd Cir. 1986), these observations alone are not determinative of the issue. QUINTIERI, 306 F.3d @ 1233.

To be sure, counsel's judgement about his client's state of mind is particularly significant to a courts decision on a defendant's competency. See UNITED STATES V. SANDOVAL, 365 F. Supp. 2d 319, 326 (E.D.N.Y. 2005) (citing cases within the Second Circuit, and United States Supreme Court that have recognized the same). ID. (finding defendant incompetent to stand trial in part where former counsel

expressed his view that he could not have meaningful discussions with him regarding his defense and another former counsel said he was incompetent. "The opinions of a defendant's attorney as to his ability to understand the nature of the proceedings and to cooperate in the preparation of his defense, is indeed significant and probative." **UNITED STATES EX REL. ROTH V. ZELKER**, 455 F.2d 1105, 1108 (2nd Cir. 1972), cert. denied, 539 U.S. 902 (2003).

Likewise, the Supreme Court has recognized; "Although an impaired defendant might be limited in his ability to assist counsel in demonstrating incompetence, the defendant's inability to assist counsel, can, in and of itself, constitute probative evidence of incompetence, and a defense counsel will often have the best informed view of the defendant's ability to participate in his defense." **MEDINA V. CALIFORNIA**, 505 U.S. 437, 450 (1992) (citation omitted). Indeed, one court has even equated counsel's layperson opinion with an expert opinion: "[C]ounsel's firsthand evaluation of a defendant's ability to consult on his case and to **UNDERSTAND THE CHARGES AND PROCEEDINGS AGAINST HIM** may be as valuable as an expert psychiatric opinion on his competency." **UNITED STATES V. DAVID**, 511 F.2d 355, 360 (D.C. Cir. 1975)

A court should not deny a motion for a hearing under 4241(a) unless there is a lack of reasonable cause, frivolity, or lack of good faith. **UNITED STATES V. METCALFE**, 698 F.2d 877, 881 (7th Cir.) Cert. Denied, 461 U.S. 910 (1983). Significantly, even if a defendant is competent at all times; a court **MUST** always be alert to "a change that would render the accused unable to meet the standards of competence." **DROPE** @ 181.

This issue rests on ineffective assistance of counsel, and whether or not counsel should have moved the court for a mental health evaluation, and competency hearing prior to Mr. Geraldo waiving his rights.

Clearly, counsel should have moved the court for both a mental health evaluation, and a hearing. Clearly it was counsel who made much ado regarding Mr. Geraldo's mental deficiencies at sentencing, and on appeal. His failure to investigate let to his failure to file the correct pre-trial motions, and those failures also led to counsel allowing Geraldo to plead guilty regardless if he could appreciate the consequences he was facing.

## CONCLUSION

This court should remand this case for further fact finding to determine why counsel failed to petition the court for a mental health examination, and competency hearing. It should also be determined when exactly counsel learned of Mr. Geralso's mental health disabilities? if it was before his plea of guilt then counsel should be made to explain to this court why counsel did not secure a mental health examination for Mr. Geraldo. If counsel found out about his mental health after the plea of guilt then counsel should explain to this court why he failed to do a proper investigation prior to allowing Mr. Geraldo to plead guilty.

## GROUND THREE

### MR. GERALDO WAS DENIED HIS
### SIXTH AMENDMENT RIGHT TO EFFECTIVE
### ASSISTANCE OF COUNSEL DURING THE

SENTENCING PHASE OF THIS CASE

AS A RESULT OF COUNSELS FAILURES

TO ARGUE APPROPRIATELY FOR A SENTENCE

SUFFICIENT TO ACHIEVE THE GOALS

OF SENTENCING PURSUANT TO 18 U.S.C.

§3553(a).

A. Counsel failed at sentencing to argue for a sentence
sufficient but not greater than necessary to achieve the goals of
sentencing.

## I. APPLICABLE LEGAL PRINCIPLES

An ineffective assistance of counsel claim is reviewed under the
standard set forth in **STRICKLAND V. WASHINGTON**, 466 U.S. 668, 104
S.Ct. 2052, 80 L.Ed. 2d 674 (1984). To prevail, the petitioner must
demonstrate, first, that counsel's conduct was below an objective
standard of reasonableness established by prevailing professional
norms and, second, that the deficient performance caused prejudice
to her. Id. @ 687-88. Counsel is presumed to be competent. The
petitioner bears the burden of demonstrating unconstitutional
representation. **UNITED STATES V. CRONIC**, 466 U.S. 648, 658, 104
S.Ct. 2039, 80 L.Ed. 2d 657 (1984). To satisfy the prejudice prong
of the **STRICKLAND** test, the petitioner must show that there is a
"reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different", 466
U.S. @ 694. The probability must "undermine confidence in the
outcome" of the trial. **STRICKLAND.** 466 U.S. @ 694. The court
evaluates counsel's conduct at the time the decisions were made, not
in hindsight, and affords "a heavy measure of deference" to

counsel's decisions. ROMPILLA V. BEARD, 545 U.S. 374, 381, 125 S.Ct. 2456, 162 L.Ed. 2d 360 (2005). To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice. STRICKLAND, 466 U.S. @ 700. This standard also applies to sentencing counsel.

## II. ANALYSIS

The facts in Mr. Geraldos case are straight forward. He entered into a plea agreement with the government. The court held a Fatico hearing and made factual determinations that exposed Mr. Geraldo to an advisory guideline range of 210-262 months. The probation department issues a P.S.R. with a recommendation of 188 months of imprisonment. In the end the court upwardly departed to 320 months of imprisonment.

At sentencing the government despite their agreement to a guideline range of 210-262 months came back to argue for an upward variance. (S.Tr. @ page 13).

Counsel made no argument regarding the governments tactic to engage in plea negotiations leading counsel to believe that 210-262 months was appropriate to only come through the back door and argue for an upward variance. Instead counsel put forth an argument regarding Mr. Geraldos mental health. the following exchange is worth noting;


THE COURT: Wait a minute. I didn't have the facts about his learning disability in front of me?

MR. VILLANUEVA: That's what I'm referring to. (S.Tr. @ page 29).

This demonstrates counsels failure as argued at Ground Two, and goes to Geraldos argument here. Counsel also argued against this courts prior rulings at the Fatico hearing which seemed to anger the court, and may very well have had an effect on the courts determination on sentencing. (S.Tr. @ page 29-30). It was almost as if counsel was arguing that Mr. Geraldo entered a plea of guilt for a crime he did not commit, or at the very least counsel was arguing outside the scope of Mr. Geraldos acceptance of responsibility.

Furthermore, the court outlined its decision for an upward variance based on Geraldos alleged "blood thirstiness." Here, counsel made no attempt to object to that miscalculation. Counsel made no objections to the sentencing courts proffered justifications for its disproportionate variance to 320 months. Should he have done so? Counsel did so in his appeal brief so then why did he not do it at sentencing? Counsels performance at sentencing did not meet the **STRICKLAND** standard in this case. Thus, counsel's performance amounted to the denial of the Sixth Amendment.

The facts of this case militate that an evidentiary hearing should be had for further fact finding. Mr. Geraldo has alleged facts that if proven to be true would entitle him to relief. **MACHIBRODA V. UNITED STATES**, 368 U.S. 487, 493-495, 82 S.Ct. 510 (1962), reminds us that 28 U.S.C. §2255 commands:

Unless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall * * * grant a prompt hearing thereon, determine the issues and make findings of fact and conclusion of with respect thereto. The requirement that an evidentiary hearing be held,

"unless the motion and the files and records of the case show conclusively that the movant is not entitled to relief is not a "high bar for habeas petitioners to meet." See UNITED STATES V. BARTHOLOMEW, 974 F.2d 39, 41 (5th Cir. 1992) (A motion brought under 28 U.S.C. §2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief. See also MURCHU V. UNITED STATES, 926, F.2d 50, 57 & n.12 (1st Cir. 1991), (district court erred in refusing to conduct evidentiary hearing where petitioners allegations concern in plea were "not conclusory, contradicted by the record, or so inherently incredible as to permit them to be ignored.) CIAK V. UNITED STATES, 59 F.3d 296, 306-07 (2d Cir. 1995) (evidentiary hearing warranted where petitioner "alleged facts, which, if found to be true, would have entitled him to habeas relief). GOVERNMENT OF VIRGIN ISLANDS V. WEATHERMAX, 20 F.3d 572, 573 (3d Cir. 1994); UNITED STATES V. MAGINI, 973, F.2d 261, 264 (4th Cir. 1992); ARRENDONDO V. UNITED STATES, 178 F.3d 778, 782 (6th Cir. 1999); BRUCE V. UNITED STATES, 256 F.3d 592, 597 (7th Cir. 2001); WATSON V. UNITED STATES, 493 F.3d 960, 964 (8th Cir. 2007); UNITED STATES V. BLAYLOCK, 20 F.3d 1458, 1465 (9th Cir. 1994); UNITED STATES V. ESTRADA, 849 F.2d 1304, 1306-07 (10th Cir. 1988); ANDERSON V. UNITED STATES, 948 F.2d 704, (11th Cir. 1991); FRIEDMAN V. UNITED STATES, 588 F.2d 1010, 1015 (5th Cir. 1979), (contested fact issues cannot be resolved on the basis of conflicting affidavits).

Nothing in the record refutes Mr. Geraldo's allegations that counsel performed deficiently during the pre-trial process, and that he was prejudiced there from as a result of that ineffective

performance. This case is a text-book example of what ineffective assistance of counsel is. A hearing for further fact finding should be had in this case to aid the court in making the correct decision in this case. Here, Geraldo has met **STRICKLAND**'s two - pronged test.

## CONCLUSION

Mr. Geraldo's cry of distress is his call to rescue. Today he asks that this court rescue him from his 320 - month sentence.

Respectfully Submitted

x Manuel Geraldo

Manuel Geraldo

Manuel Geraldo

(Exhibit A)

IN THE UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF NEW YORK

---

MANUEL GERALDO

    PETITIONER,

VS.                               CASE NO: 11-CR-1032-68(PAE)

                                      HON. PAUL A. ENGELMAYER

UNITED STATES OF AMERICA

    RESPONDENT.

---

**AFFIDAVIT OF MANUEL GERALDO IN SUPPORT OF**

**RELIEF PURSUANT TO 28 U.S.C. §2255.**

---

1. I am Manuel Geraldo the petitioner in the attached petition for relief pursuant to 28 U.S.C. §2255.

2. I was arrested and charged in federal court with violating the law. Counsel was appointed to represent me on those charges.

3. During the pre-trial phase of my case my attorney presented me with a plea offer from the government. He explained to me that by

pleading guilty I was facing 210-262 months imprisonment.

4.  At the time we discussed the plea I was concerned with a stipulation leaving open whether certain actions qualified as first or second degree murder. My attorney told me specifically that the law, and facts were on my side. We went over the guidelines, and my attorney told me that I would not be sentenced to anything more than 263 months. He told me my likely sentence would be in the neighborhood of 240 months. I accepted the plea offer based on counsel's advice.

5. Prior to the plea my attorney told me that he was going to have me evaluated by a doctor, and have his investigator meet with me. That never happened even though my attorney told me how important both things were.

6. There were times when I explained to counsel that I had some learning disabilities, and did not understand everything that was going on in the case. On those occasions he told me that a doctor was going to come and see me. That never happened.

Signed under the penalty of perjury
this ___14___ day of ___November___, 2017.

X _Manuel Geraldo_

Manuel Geraldo

Manuel Geraldo

(Exhibit B)

render the ultimate sentence unreasonable." *United States v. Rigas*, 583 F.3d 108, 119 (2nd Cir. 2009) Nor is the court mandated to "precisely identify either the factors set forth in § 3553(a) or specific arguments bearing on the implementation of those factors in order to comply with her duty to consider [them]." *United States v. Fernandez*, 443 F.3d 19, 29 (2nd Cir. 2006) Indeed, on review, this Circuit "presume[s], in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged her duty to consider the statutory factors." *Id.*, at 30. However, where, as here, the sentencing court admittedly disregards defining characteristics of the offender, the resulting sentence is procedurally flawed.

In this case, the sentencing court refused to consider appellant's persistent disability and, more importantly, its impairment of his judgment. Invoking a dubious legal standard to foreclose consideration, the court summarily dismissed appellant's arguments and the voluminous academic records and reports documenting his diminished intellectual capacity and its detrimental impact, along with immaturity, on his judgment. Even had appellant sought a downward departure under the strict guidelines regime – which he did not – he would not have been required to demonstrate that his disability "prevented [him] from distinguishing between right and wrong." *United States v. Vasquez*, 426 F.3d 178, 184 (2nd Cir. 2005) ("The standard for granting a downward departure on the basis of diminished

capacity is not that the defendant recognizes the difference between right and wrong ... but rather that his diminished mental capacity significantly *impaired* his judgment or his ability to understand the wrongfulness of his actions.")

As set forth in the Statement of Facts, Appellant rightly presented the court with authority and compelling evidence of his unique history and characteristics, including the causal link between his youth and disability, on the one hand, and his offense and post-offense conduct, on the other hand.  Informed by recent decisions of the Supreme Court, appellant asked the sentencing court to take into account his lack of maturity and underdeveloped sense of responsibility, leading to recklessness, impulsivity and heedless risk-taking during the course of gang-related activity.  See, e.g., *Eddings v. Oklahoma*, 455 U.S. 104 (1982) *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham v. Florida,* 560 U.S. 48 (2010), *Miller v. Alabama*, 567 U.S. _____, 132 S.Ct. 2455 (2012) ;

In his sentencing submission, appellant disclosed vulnerability to negative influences, limited control over his environment and an inability to appreciate or extricate himself from the instant horrific, crime-producing scenes, which he neither instigated nor lead.

These unique characteristics of youth – exacerbated, amplified and intensified by appellant's particular disability – were discounted.  Without them, the court possessed only an incomplete and imperfect picture of appellant, who at the time he

23