UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

MANUEL GERALDO,

Defendant.

11 Cr. 1032-68 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

Manuel Geraldo pled guilty to one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). That charge arose from Geraldo's participation, as a member of the Bronx Trinitarios Gang ("BTG" or "Trinitarios"), in the murder of Orlando Salgado and the attempted murder of a rival gang member. In 2015, the Court sentenced Geraldo to an above-Guidelines term of 320 months' imprisonment, followed by five years of supervised release. On direct appeal, the Second Circuit affirmed Geraldo's conviction and sentence. Geraldo, now *pro se*, petitions to vacate his sentence under 28 U.S.C. § 2255. He argues that his counsel rendered ineffective assistance by underestimating the Court's sentencing determination before Geraldo pled guilty, failing to pursue a competency examination and hearing, and failing to pursue certain arguments at sentencing. Dkt. 2545 ("Pet.") at 2, 10, 20–21.[1]

For the following reasons, the petition is denied.

---

[1] Geraldo claims to have filed his § 2255 petition in November 2017, Dkt. 2375, and the Government appears to have received that filing, Dkt. 2379. The Court, however, has no record of receiving the petition and did not open a civil case associated with it. Accordingly, all docket citations are to the docket in the criminal case, 11 Cr. 1032.

I.      **Background**

A.      **Criminal Conduct**

Geraldo, as a member of the BTG, participated in the "terrible and particularly evil" murder of Orlando Salgado.  Dkt. 1821 ("Sent. Tr.") at 40–41.  On March 19, 2010, another Trinitarios member got into a fight with Raymond Hernandez, a member of the rival Latin Kings gang.  *See* Dkt. 1761 ("*Fatico* Decision") at 2.[2]  That night, the Trinitarios held a meeting to discuss that fight and the gang's response to it.  After the meeting, co-defendant Hargelis Vargas and the Trinitarios member who had been involved in the earlier fight enlisted Geraldo and others to retaliate against the Latin Kings.  Geraldo agreed to help, and the group, armed with knives and other weapons, drove 23 blocks north to carry out their attack.  According to Geraldo's co-defendants, they did so because of the BTG rule that "when a Trinitario bleed, we all bleed," and because they were "eager to develop a reputation as ruthless, violent, and tough."

After the group arrived at their destination, they began to search the area on foot.  Vargas soon saw and identified Hernandez, who was walking with Salgado.  Hernandez managed to run away, and the group instead set upon Salgado, who had no gang affiliation.  *See* Sent. Tr. at 41–42 ("[Salgado] was a complete innocent.  He had nothing to do with any gang rivalry, so far as anyone knew.  He begged for his life.  He was denied.").  One Trinitarios member struck Salgado several times in the head with a hammer, causing him to fall to the ground.  Another then hit him with a metal pipe.  Once Salgado fell, Geraldo and another man stabbed him repeatedly.  Then, they fled.  During their flight, one person remarked, "damn . . . we killed him."  Geraldo later "brag[ged]" that he "had stabbed a guy to death."  The next day, the group learned that Salgado had, in fact, died.

---

[2] Unless otherwise noted, facts about the Salgado murder are drawn from the Court's decision, after a *Fatico* hearing, finding that the killing qualified as a second-degree murder.

Geraldo was also involved in several other violent incidents, which involved the stabbing, beating, and shooting of other victims, who were largely rival gang members.  Sent. Tr. at 43. Geraldo personally stabbed one such victim, intending to kill him.  *Id.*

**B.      Indictment and Plea**

In February 2013, a grand jury indicted Geraldo on 10 charges, including racketeering, racketeering conspiracy, and several other counts based on his participation in the Salgado murder and two other attempted murders.  *See* Dkt. 539.

In December 2014, Geraldo pled guilty, pursuant to a plea agreement, to one racketeering conspiracy count.  18 U.S.C. § 1962(d).  At his plea hearing, he admitted to participating in the murder of Salgado and other violence.  Dkt. 1627 ("Plea Tr.") at 20–21.  Under the plea agreement, the parties left open, for resolution at a *Fatico* hearing, whether the Salgado murder qualified as a first- or second-degree murder.  *Id.* at 16–17.  They stipulated that, if it were in the first degree, the Guidelines range would be 324 to 405 months' imprisonment, and if it were in the second degree, that range would be 210 to 262 months' imprisonment.  *Id.* at 18.

At the plea hearing, Geraldo confirmed that he understood the maximum penalty for participating in a racketeering conspiracy was life imprisonment.  *Id.* at 9–10.  He also acknowledged: that (1) the Guidelines ranges set forth in his plea agreement were not binding on the Court, *id.* at 11–12; (2) even if the Court agreed with the calculation of those ranges, it retained discretion to impose a sentence above or below what the Guidelines recommended, *id.* at 12–13; (3) "if [his] attorney or anyone else has attempted to predict what [his] sentence [would] be, their prediction could be wrong"; and (4) he had discussed these issues with his counsel, *id.* at 13–14.  He also testified that he had never been treated for any mental illness.  *Id.* at 5.  And the Court found, after a colloquy with Geraldo, his counsel, and counsel for the Government, that Geraldo was competent to enter a plea of guilty at that time.  *Id.* at 5–6.

### C.    *Fatico* Hearing and Decision

In July 2015, the Court held a *Fatico* hearing to determine whether the Salgado murder qualified as a first- or second-degree murder.  *See United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979).  Later that month, the Court issued a decision concluding that, although the question was close, the attack on Salgado was "more accurately characterized as second-degree murder."  *Fatico* Decision at 1.  The attack on Salgado, all parties agreed, was premeditated.  *Id.* at 7.  But, as to Geraldo, the Court found that the evidence was "more consistent with an intent to assault than an intent to kill."  *Id.* at 8.  Even though the attack showed "bloodthirstiness and savagery" and fell close to the line between first- and second-degree murder—such that the Court noted its inclination to impose an above-Guidelines sentence—ultimately the Court found that Geraldo murdered Salgado in the second degree.  *Id.* at 11.

### D.    Sentencing

In October 2015, the Court sentenced Geraldo.  In accord with the parties' stipulation, the Court found the applicable Guidelines range to be between 210 and 262 months' imprisonment. Sent. Tr. at 10.  Even so, the Court agreed with the Government that, given the extraordinary nature of Geraldo's offense, an upward variance from that range was necessary to achieve the sentencing goals embodied by the factors in 18 U.S.C. § 3553(a).  *See id.* at 53; *id.* at 43 ("The guidelines here for second-degree murder, in my estimation, do not contemplate anything like the level of forethought and bloodthirstiness and cruelty that you and your fellow gang members exhibited here.").  After discussing those factors at length—including those that pointed toward a lower sentence, such as Geraldo's learning disability and difficult upbringing—the Court imposed a sentence of 320 months' imprisonment, to be followed by five years' supervised release.  *See id.* at 39–53; *id.* at 49 (recognizing significance of Geraldo's "absent father, limited opportunities, and some degree of ADHD and related learning disabilities").

4

### E.      Direct Appeal

In November 2015, Geraldo, represented by counsel, appealed.  Dkt. 1816.  He argued that the Court's sentence was both procedurally and substantively unreasonable.  First, he contended that it was procedurally unreasonable because the Court disregarded Geraldo's disability and how it impaired his judgment at sentencing.  Second, he argued that the Court erred substantively by failing to explain its basis for imposing an above-Guidelines sentence.  In April 2017, the Second Circuit affirmed in a summary order.  *United States v. Geraldo*, 687 F. App'x 101, 109 (2d Cir. 2017) (summary order).  It held that the Court "did consider and discuss the significance of Geraldo's learning disability," but found that factor outweighed, *inter alia*, by the savage nature of his crimes.  *Id.* at 105–06.  It also held that, given the "very serious nature of the violent acts Geraldo admitted to committing," his sentence was not substantively unreasonable.  *Id.* at 106.

### F.      Geraldo's § 2255 Petition

On December 21, 2018, the Court received from Geraldo a letter stating that he had filed a petition under 28 U.S.C. § 2255 on November 14, 2017, and that the Government had not yet responded.  Dkt. 2375.  At that point, the petition had not been docketed and the Court had not received it.  Nevertheless, on the same day, the Court directed the Government to file its response to Geraldo's § 2255 petition.  *Id.*  On January 11, 2019, the Government—having received the petition—filed an opposition on the docket.  Dkt. 2379 ("Gov't Opp'n").  On February 12, 2019, Geraldo filed a reply, which the Court received.  Dkt. 2389 ("Reply").  On October 29, 2020, Geraldo filed a letter asking about the status of his petition.  Dkt. 2527.  On December 9, 2020, having obtained Geraldo's original petition with help from the Government, the Court placed it on the docket.  *See* Pet.

## II.      Applicable Legal Standard

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence because "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation omitted).

A claim of ineffective assistance of counsel, however, is a permissible basis for bringing a § 2255 petition.  The Sixth Amendment affords a defendant in criminal proceedings the right "to effective assistance from his attorney at all critical stages in the proceedings."  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).  A defendant claiming ineffective assistance must establish that (1) his "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

As for *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).  A court is to start from the "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  That is because there are many different ways to

6

provide effective assistance, and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689–90; *see id.* at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."); *Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015).

With respect to *Strickland*'s second prong, a petitioner who has pled guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In addition, a petitioner may show prejudice by showing that he would have received and accepted a guilty plea with a lower sentence but for counsel's errors. *See Missouri v. Frye*, 566 U.S. 134, 147–48 (2012); *Lafler v. Cooper*, 566 U.S. 156, 174 (2012) (finding prejudice where defendant showed that, but for counsel's deficient performance, there was a reasonable probability that defendant and the court would have accepted a guilty plea with a sentence less than a third of the length of the sentence he received after trial). In the plea-bargaining context, a defendant must show that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163.

"In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez*, 722 F.3d at 130 (quoting 28 U.S.C. § 2255). Thus, for a petitioner filing a motion under § 2255 to obtain a hearing, "the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id.* at 131 (citing *Machibroda v. United States*, 368 U.S. 487, 494 (1962)).

There is no constitutional right to counsel in a proceeding brought under § 2255.  *See, e.g.*, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  The Criminal Justice Act ("CJA") provides that a court may appoint counsel to an indigent person in a § 2255 proceeding when "the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).  In deciding whether to exercise its discretion to appoint counsel under the CJA, courts in the Second Circuit consider the same factors as those applicable to requests for *pro bono* counsel made by civil litigants. *See, e.g.*, *Bennett v. United States*, No. 03 Civ. 1852 (SAS), 2004 WL 2711064, at *7 (S.D.N.Y. Nov. 23, 2004).  Those factors include the likelihood of success on the merits, the complexity of the legal issues, and the movant's ability to investigate and present the case.  *See, e.g.*, *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986).

## III.    Discussion

Geraldo raises three arguments in support of his § 2255 petition, each sounding in ineffective assistance of counsel.  First, Geraldo argues that, before he pled guilty, his counsel erroneously predicted that the Sentencing Guidelines range applicable to his case would be 210 to 262 months' imprisonment, and that his ultimate sentence would not exceed that range. Second, Geraldo contends that his counsel—despite at one point suggesting that he would have Geraldo examined by a mental-health expert—never did so and erred by failing to seek a competency hearing before Geraldo pled guilty.  Third and last, Geraldo argues that his counsel provided ineffective assistance at his sentencing by failing to object to the Government's advocacy for an above-Guidelines sentence and the Court's characterization of Geraldo's crime. Because the record and applicable law conclusively show that habeas relief is unmerited under any of these theories, the Court denies Geraldo's petition, as well as his requests for a hearing and for counsel.

8

A.      **Counsel's Sentencing Prediction**

Geraldo alleges that, before his plea, his counsel "went over the guidelines with Mr. Geraldo and told him that his sentencing exposure would be 210–262 months, and that he would likely be sentenced to a term in the neighborhood of 240 months."  Pet. at 4–5.  Geraldo also contends that his counsel "assured" him that his sentence would not exceed 262 months, that he decided to accept the Government's plea offer in reliance on that prediction, and that this overly optimistic estimation constitutes ineffective assistance of counsel.  *Id.* at 5.

"Errors in counsel's predictions of a defendant's ultimate sentence under the Sentencing Guidelines generally do not constitute ineffective assistance of counsel because such predictions are, by nature, only guesses or estimates."  *Francisco v. United States*, 115 F. Supp. 3d 416, 420 (S.D.N.Y. 2015); *see United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (defendant may not "characteriz[e] a mistaken prediction as ineffective assistance of counsel").  This holds true even where counsel has "assured" a defendant of a certain sentencing outcome.  *See, e.g.*, *Chukwurah v. United States*, 813 F. Supp. 161, 166 (S.D.N.Y. 1993) ("[P]etitioner argues that defense counsel misleadingly assured petitioner that his sentence would be less than 41 months. This contention does not suffice as a basis for an ineffective assistance claim as a matter of law.").  Where a defendant is arguing that his attorney  "misled him as to the possible sentence which might result from a plea of guilty, . . . the issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea."  *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (quoting *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992)).  Allegations a defendant makes in a § 2255 petition "cannot overcome his contrary statements under oath during a plea allocution, which must be given the presumptive force of truth."  *Francisco*, 115 F. Supp. 3d at 420 (citing *United States v. Hernandez*, 242 F.3d 110, 112–13 (2d Cir. 2001) (per curiam)).

Here, Geraldo does not even allege that his counsel failed to advise him of the actual sentencing consequences of his plea.  Indeed, he acknowledges that counsel explained to him that the plea agreement left open whether the Salgado killing would be considered first- or second- degree murder, and that Geraldo "expressed his concerns" over the sentencing consequences of that uncertainty (which exposed him to up to 405 months' imprisonment under the Guidelines).  Pet. at 4.  And during his plea allocution, Geraldo confirmed under oath and upon questioning from the Court that (1) he understood the maximum sentence for the crime to which he pled guilty was life imprisonment, Plea Tr. at 9–10; (2) the Court retained discretion to impose sentence outside the applicable Guidelines range, *id.* at 12–13; (3) no one had made him any promise as to his ultimate sentence, *id.* at 19; and (4) if anyone, including his lawyer, had made any such promise, "their prediction could be wrong," *id.* at 13; *see id.* ("No one, not your attorney, not the government's attorney, no one can give you any assurance of what your sentence will be, because I am going to decide your sentence.").[3]  Because merely inaccurate sentencing predictions do not support a claim for ineffective assistance of counsel, *see Sweeney*, 878 F.2d at 70, Geraldo has failed to rebut the strong presumption that his counsel's performance fell "within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689.

Even had he done so, this claim would still fail because he has not identified any prejudice resulting from his counsel's inaccurate prediction.  As noted, Geraldo's plea allocution conclusively shows that he was aware of the sentencing possibilities—up to the maximum of life imprisonment—when he entered his guilty plea.  *See Arteca*, 411 F.3d at 320; Plea Tr. at 9–14, 19.

---

[3] To the extent Geraldo now suggests that counsel had left him unaware of the full range of sentencing possibilities when he pled guilty, including the possibility of life imprisonment or the imposition of any other above-Guidelines sentence, *see, e.g.*, Reply at 10, that representation contradicts the record of his plea allocution.  *See* Pl. Tr. at 9–10, 12–14, 19.  The Court thus disregards it.  *See Hernandez*, 242 F.3d at 112–13.

Such representations "must be given the presumptive force of truth." *Francisco*, 115 F. Supp. 3d at 420. Geraldo thus "cannot show prejudice even if counsel's representations were deficient because the Court advised him about the consequences of his plea before accepting that plea," and he still chose to do so. *Marte v. United States*, No. 02 Cr. 1490 (KMW), 2012 WL 2953723, at *6 (S.D.N.Y. July 20, 2012); *see also Hsu v. United States*, 954 F. Supp. 2d 215, 221 (S.D.N.Y. 2013).[4]

Accordingly, the Court rejects Geraldo's claim for ineffective assistance based on any erroneous sentencing prediction by his counsel.

### B.      Counsel's Failure to Pursue a Competency Hearing

Next, Geraldo argues that his counsel was ineffective for failing to pursue a mental-health evaluation and then seek a competency hearing before the Court. Pet. at 12–13. The basis for this claim is that Geraldo's counsel allegedly represented to him that counsel "was going to have [Geraldo] evaluated by a mental health expert" but failed to do so, and later raised mental-health issues at sentencing and on appeal. *Id.* He therefore claims that his counsel realized too late that Geraldo's mental health rendered him incompetent to enter a guilty plea and that, had counsel sought a competency evaluation and hearing before the plea hearing, the Court might have found Geraldo incompetent to plead guilty.

---

[4] Geraldo does not even contend that, absent his counsel's error, he would have gone to trial. Instead, he argues that, had he known that the maximum sentence was life imprisonment, he would have urged his counsel to press for a better plea deal. *See* Pet. at 7–9 (suggesting that his counsel should have sought a "binding plea"). The Second Circuit "has repeatedly rejected ineffective assistance claims where, as here, the petitioner in retrospect finds fault with the plea negotiated by counsel." *Albanese v. United States*, 415 F. Supp. 2d 244, 250 (S.D.N.Y. 2005) (collecting cases). Geraldo does not offer any evidence that he might have received such a plea offer after rejecting the one he accepted. And given the heinous nature of his crimes, the Government's position that the Salgado murder qualified as a first-degree murder, and the plea offers extended to other Trinitarios members implicated in that murder, his speculation that he might otherwise have been offered more favorable plea terms is quite unpersuasive.

That claim also fails.  The standard for determining whether a defendant is competent to plead guilty is well settled:  "The defendant must have (1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well as factual understanding of the proceedings against him.'"  *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)).

There is compelling evidence in the record that Geraldo was competent to enter his guilty plea.  The Court carefully examined this subject at Geraldo's plea hearing, at which Geraldo testified that he had never received any treatment for mental illness, had never been treated for drug or alcohol addiction, and that his mind was clear that day.  Plea Tr. at 5.  His counsel and counsel for the Government both confirmed that they had no doubt as to Geraldo's competence to enter his plea.  *Id.* at 5–6.  And the Court, independently, found Geraldo to be competent to plead guilty based on his demeanor, his colloquy with the Court, and the representations of counsel.  *Id.*  "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," since "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *see Oliver v. United States*, No. 07 Civ. 5921 (DLC), 2008 WL 190487, at *15 (S.D.N.Y. Jan. 22, 2008) ("On habeas review, the Court is entitled to rely on these statements, and they will not be set aside based on vague or conclusory allegations.").  Moreover, the presentence report prepared by the Probation Department concluded the same at the time of Geraldo's sentencing.  *See* Dkt. 1668 ("PSR") ("The defendant reported no history of mental or emotional problems, and we have no information which indicates otherwise.  Geraldo impressed as coherent during the presentence interview and responded appropriately to all questions asked.").

Aside from conclusory allegations, Geraldo has not offered any evidence to undermine his own sworn statements in open court or the conclusions of the Court and his counsel as to his competency at the time he pled guilty.  To be sure, as the Court recognized at sentencing, Geraldo has a learning disability: ADHD.  Sent. Tr. at 49.  But that does not compel the conclusion that Geraldo's competency to plead guilty was ever in doubt, so as to require a diligent attorney to pursue a mental-health screening or competency hearing before entry of a guilty plea.  Courts in this District have often recognized that, even where a defendant had a documented mental-health condition, his competency to stand trial or plead guilty may still be beyond question.[5]

Given Geraldo's representations about his mental state at the time of his plea and his counsel's and the Court's conclusions therefrom, there is no basis to conclude that his counsel was ineffective in failing to pursue a mental-health evaluation or competency hearing before Geraldo's plea.  *See Chavez v. United States*, 764 F. Supp. 2d 638, 643 (S.D.N.Y. 2011) (not ineffective to fail to pursue psychiatric evaluation where "there is nothing in the record sufficient to overcome the substantial evidence of [defendant's] competency").  Nor can Geraldo

---

[5] *See, e.g.*, *Quail v. Farrell*, 550 F. Supp. 2d 470, 479 (S.D.N.Y. 2008) (decision not to investigate competency reasonable despite "evidence of [defendant's] psychiatric difficulties"); *Oliver*, 2008 WL 190487, at *4–5 (decision not to pursue psychiatric evaluation despite evidence of depression and anxiety not ineffective given judicial determination of competency to plead guilty); *Albanese v. Capra*, No. 13 Civ. 5152 (CS) (JCM), 2017 WL 9534740, at *14 (S.D.N.Y. Feb. 24, 2017) ("While he has an extensive history of mental health issues and treatment, that is not evidence that he was mentally incompetent at the time of trial."), *report and recommendation adopted*, 2017 WL 2954401 (S.D.N.Y. July 10, 2017); *Alexander v. Connell*, No. 05 Civ. 9020 (WHP) (HBP), 2010 WL 2165273, at *15 (S.D.N.Y. Apr. 9, 2010) (rejecting ineffective-assistance claim for failure to pursue competency hearing, "[g]iven the fact that not all mental diseases or defects are necessarily so disabling as to render a defendant unable to enter a guilty plea"), *report and recommendation adopted*, 2010 WL 2165272 (S.D.N.Y. May 28, 2010); *see also Coleman v. Rick*, 281 F. Supp. 2d 549, 558 (E.D.N.Y. 2003) ("Petitioner has provided no evidence that he was not competent to plead; evidence of his learning disability does not suffice.").

demonstrate the requisite prejudice.  "Because [Geraldo's] own statements and actions in open court indicated his clarity of mind, a competency hearing"—even if pursued and granted—"would not have altered the course of his case."  *Guzman v. United States*, 13 Civ. 6806 (MGC), 2015 WL 1137533, at *4 (S.D.N.Y. Mar. 12, 2015).

Accordingly, the Court rejects Geraldo's petition based on his counsel's failure to pursue a mental-health evaluation or competency hearing.

### C.    Counsel's Performance at Sentencing

Last, Geraldo argues that his counsel was ineffective at his sentencing.  Pet. at 22–25.  He points to his counsel's (1) failure to object to the Government's advocacy for a sentence above the Guidelines range it agreed applied; (2) argument about the Court's *Fatico*-hearing ruling, which the Court found unpersuasive; and (3) failure to object to the Court's characterization of Geraldo's "bloodthirstiness" or other assessments of the § 3553(a) factors.  *Id.* at 22–23.

None of these allegations establish ineffective assistance.  First, they are baseless. Although Geraldo's counsel did not specifically "object" to the Government's above-Guidelines recommendation at the sentencing hearing, he did—in a sentencing submission the Court praised as "extremely effective and well done," Sent. Tr. at 24—pursue a *below*-Guidelines sentence of 188 months' imprisonment, Dkt. 1781 at 2.  Geraldo's other two sentencing critiques are contradictory: in one, he faults his counsel for purportedly "argu[ing] against th[e] Court's prior rulings at the *Fatico* hearing which seemed to anger the [C]ourt," Pet. at 23, while in the other he criticizes counsel for not objecting to the Court's description of Geraldo as "bloodthirsty"—a finding expressly set forth in the Court's *Fatico* Decision, *see Fatico* Decision at 11 (crimes reflected "bloodthirstiness and savagery").  None of Geraldo's allegations on this point overcome *Strickland*'s strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

Second, even assuming, *arguendo*, that each decision was objectively unreasonable, there is no evidence that any prejudiced Geraldo.  "When evaluating whether [Geraldo's] sentencing would have been different but for counsel's alleged error, '[t]he likelihood of a different result must be substantial, not just conceivable.'"  *Reyes v. United States*, No. 07 Cr. 783 (WHP), 2013 WL 2111284, at *3 (S.D.N.Y. May 8, 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 111 (2011)).  Here, the 320-month sentence imposed—affirmed by the Second Circuit—rested on an exhaustive analysis of the § 3553(a) factors.  *See* Sent. Tr. at 39–53.  It turned mainly on "the seriousness of [Geraldo's] offense," *i.e.* "the savage murder of an innocent man, followed not by refraining from violence, but by other acts of violence including an attempted murder in which [Geraldo] did the stabbing."  *Id.* at 53.  And it was consistent, all § 3553(a) factors considered, with the sentences imposed on other Trinitarios members implicated in homicides, including the Salgado murder.  Geraldo has not described any conceivable, let alone a substantial, likelihood that his preferred strategic decisions would have changed that outcome.

Accordingly, his counsel's performance at sentencing also does not provide a basis to vacate his sentence under § 2255.

## D.     Evidentiary Hearing

Geraldo requests an evidentiary hearing on all of his claims.  *See* Reply at 5.  "In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *Gonzalez*, 722 F.3d at 130 (quoting 28 U.S.C. § 2255).  But "the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'"  *Id.* (quoting *Machibroda*, 368 U.S. at 495).  "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact

15

that, if proved at a hearing, would entitle him to relief." *Id.* at 131.  "In determining whether the assertions in a § 2255 motion warrant discovery or a hearing, the court must also take into account admissions made by the defendant at his plea hearing." *Id.*  "[S]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Here, all of Geraldo's claims are either conclusory, belied by the record, and/or insufficient (even if proven true) as a matter of law.  As a result, no evidentiary hearing is warranted.

### E. Appointment of Counsel

Last, in his reply, Geraldo requests the appointment of counsel.  Reply at 4.  "If the petitioner's claims may fairly be heard on written submissions, the appointment of counsel is not warranted, and such applications should ordinarily be denied." *Brito v. Burge*, No. 04 Civ. 1815 (LTS) (RLE), 2005 WL 1837954, at *1 (S.D.N.Y. Aug. 3, 2005).  That is the case here, and Geraldo's request for counsel is denied.

## CONCLUSION

For the foregoing reasons, the Court denies Geraldo's petition to vacate his sentence pursuant to 28 U.S.C. § 2255.  Dkt. 2545.

The Court declines to issue a certificate of appealability.  Geraldo has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See* 28 U.S.C. § 2253(c)(2); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).  The Court also certifies that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is respectfully directed to mail a copy of this order to Geraldo.

SO ORDERED.

_____

PAUL A. ENGELMAYER
United States District Judge

Dated: January 21, 2021
       New York, New York