UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

MANUEL GERALDO,

Defendant.

11 Cr. 1032 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

The Court has received a *pro se* motion from defendant Manuel Geraldo, seeking compassionate release from Federal Correctional Institution ("FCI") Ray Brook, in New York, pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 2629 ("Def. Mtn."). For the reasons that follow, the Court denies the motion.

**I.   Background**

Geraldo was a member of the Bronx Trinitarios Gang (the "BTG"), a violent gang that from 2003 to 2011 dominated and terrorized a portion of the northwest Bronx and whose conduct was characterized by senseless and brutal retaliatory violence against real or perceived rivals. The prosecution brought under this docket number came to cover 81 gang members and affiliate defendants, who collectively committed approximately a dozen murders and countless stabbings, beatings, and other acts of violence, while selling a formidable array of drugs, including heroin, crack, and powder cocaine, in an open-air drug market.

Geraldo's most serious crime in connection with the Trinitarios entailed participating in the March 19, 2010 murder of Orlando Salgado. The facts of the murder, which were developed at an evidentiary *Fatico* hearing in advance of Geraldo's sentencing, *see* Dkt. 1751 (hearing transcript), revealed that it was carried out in response to an attack earlier that day on a BTG

member, Hargelis Vargas, by a member of the rival Latin Kings gang. Several BTG members, including Geraldo, agreed to retaliate and climbed into a van, armed with knives, a hammer, and a metal pipe. Vargas identified a man walking on the street, Raymond Hernandez, as his assailant. Hernandez ran away, but Salgado, who had been walking with him, and who had no known gang connection or antipathy to the BTG, did not. The BTG members attacked him, stabbing him and hitting him in the head with the hammer and the metal pipe. Geraldo was among the stabbers. The group drove away. Geraldo later bragged that he had "stabbed a guy to death." In 2010, Geraldo participated in other acts of violence with the BTG. These included beating and stabbing victims in a violent altercation in April 2010; assaulting rival drug dealers with bottles and a cane in summer 2010, in which a fellow assailant carried a gun; and shooting and stabbing members of the rival FOB gang, one of whom Geraldo stabbed and seriously injured, in September 2010.

On February 6, 2013, Geraldo, along with dozens of other BTG members and affiliates, was charged in a superseding Indictment. The 10 counts that named Geraldo included racketeering, racketeering conspiracy, and various counts related to the Salgado murder and two attempted murders. On December 9, 2014, Geraldo pled guilty to participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). In his plea allocution, Geraldo admitted both to participating in the Salgado murder and to stabbing a member of the FOBs some six months later, to enhance his standing in the gang. Under the plea agreement, the parties agreed to have a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), on whether the Salgado murder qualified as first- or second-degree murder, and therefore whether his Guideline range was 324–405 months (as the Government urged) or 210–262 months in prison (as Geraldo urged). Two codefendants of Geraldo's, who had also participated in the murder, pled guilty to

the same offense under plea agreements reserving the same issue. The hearing was held on July 13, 2015 and resulted in an opinion and order issued July 30, 2015. *See* Dkt. 1761. The Court there found the Salgado murder, although presenting a close question, to be a second-degree murder, because although the retaliatory attack had been premeditated, the murder had not been, thus triggering the lower of the alternative Guideline ranges for each defendant. *Id*. at 1, 7–11. However, the Court stated:

> [T]he murder falls close to the line between first and second degree. And the facts established at the *Fatico* hearing reflect extremely negatively on all three defendants awaiting sentencing. They reflect bloodthirstiness and savagery. These facts are highly relevant to several § 3553(a) factors, including "the nature and circumstances of the offense," "the need for the sentence imposed to reflect the seriousness of the offense," and the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). The Court is therefore seriously considering imposing an above-guideline sentence for the defendants involved in the Salgado murder.

*Id*. at 11.

Consistent with this assessment, the Court, at the November 24, 2015 sentencing, sentenced Geraldo to, *inter alia*, 320 months' imprisonment, predominantly on account of the gravity of his offense. *See* Dkt. 1821 ("Sent. Tr."). The Court noted that Geraldo's crime "could scarcely be more serious," *id*. at 40, that he had "personally participated in several brutal acts of violence," *id*., and that "[a]s a matter of just punishment, the premeditation of the attack, the viciousness and bloodthirstiness of the attack, the desire to inflict injury on someone, anyone, and the pride [Geraldo] took in it" demanded "a very long sentence," *id*. at 42. As to other § 3553(a) factors, although Geraldo had not had a substantial prior criminal record, there was also some interest in specific deterrence, because he had "kept on committing acts of violence," *id*. at 47, aware that he could get "caught, arrested, and prosecuted," *id*., as had happened to other BTG members. There was also some interest in public protection, given Geraldo's "track

3

record," *id.* at 48, which appeared to reveal "an attraction to violence," *id.*, with the qualifications that Geraldo's offenses had been committed with the Trinitarios, and that, upon release as an older man, he would no longer be at an age when young men "are most apt to act recklessly and impulsively," *id*. at 48–49.

On August 11, 2021, Geraldo filed a motion for compassionate release. Dkt. 2629. He notes that he has been diagnosed with a sickle cell trait and as such is at higher risk of suffering from severe disease were he to contract COVID-19. He notes that inmates are at a greater risk of contracting COVID-19. He also notes his extensive coursework, including earning a GED and an associate's degree, and lack of a disciplinary record in prison.

On April 22, 2022, the Government filed a response, opposing release on the grounds that Geraldo has not demonstrated "extraordinary and compelling reasons" warranting release or a reduction of sentence, and that the § 3553(a) factors do not support a reduced sentence. Dkt. 2659 ("Gov't Mem.").[1] According to the Government, Geraldo's projected release date is December 13, 2035. *Id*. at 4. On May 5, 2022, Geraldo submitted a reply. Dkt. 2660 ("Def. Rep.").

**II.     Discussion**

    **A.     Standards Governing Compassionate Release Motions**

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that

---

[1] The Government does not dispute that Geraldo has exhausted his administrative remedies. Gov't Mem. at 5 n.3.

4

"extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, section 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its commentary, which, *inter alia*, (1) define various circumstances that present extraordinary and compelling reasons justifying release; and (2) require that a defendant not be a danger to the safety of the community. U.S.S.G. § 1B1.13(1)–(3) & cmt. n.1. However, the guidance under this provision applies only to a "motion of the Director of the Bureau of Prisons." *Id*. § 1B1.13. It does not apply "to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *Brooker*, 976 F.3d at 236 (internal quotation marks omitted); *see also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district

5

court's discretion."). Thus, when assessing a motion brought by an imprisoned defendant and not the BOP, the Court is not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." Id. at 237.  Even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

### B. Analysis

The Court has carefully considered Geraldo's submissions and the Government's response. Although Geraldo is to be commended for his impressive educational strides in prison, the Court, for two independent reasons, does not find his application for compassionate release under § 3582(c) meritorious.

*First*, the Court does not find extraordinary and compelling circumstances sufficient to justify a reduction of sentence.

Geraldo's basis for so claiming is that he has been diagnosed with "sickle cell trait." As the Government fairly responds, however, that is a genetic predisposition that does not equate to sickle cell disease; carriers of that trait generally are asymptomatic. Geraldo has not been diagnosed with sickle cell disease and does not claim to have experienced any symptoms. Gov't Mem. at 5. And sickle cell trait has not been included on the Centers for Disease Control's list of illnesses that put a person at higher risk from severe illness from COVID-19. Id. (citing CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 20, 2022)).

Moreover, Geraldo has been fully vaccinated against COVID-19. As many courts, including this one, have noted, given the efficacy of such vaccines against severe illness, hospitalization, and death, fully vaccinated inmates are hard-pressed to claim that the risk of contracting COVID-19 presents an extraordinary and compelling circumstance. *See, e.g.*, *United States v. Gonzalez-Casillas*, No. 07 Cr. 527-1 (PAE), 2022 WL 446011, at *4 (S.D.N.Y. Feb. 11, 2022) (denying release request where defendant had not shown himself more vulnerable to COVID-19 than average inmate at his facility and had been vaccinated); *United States v. O'Bryant*, No. 16 Cr. 0317-3 (PAE), 2022 WL 17168192, at *3 (S.D.N.Y. Nov. 22, 2022) (same); *United States v. Barnett*, No. 90 Cr. 913 (LAP), 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021) (denying release request where defendant had been vaccinated, making him "no longer at high risk for severe illness caused by COVID-19"). Indeed, Geraldo's medical record reveals that, in January 2022, following vaccination, he was diagnosed with COVID-19, but he proved largely asymptomatic and did not require hospitalization. Geraldo's apparently successful recovery from COVID-19 also weighs against a finding that his circumstances are extraordinary and compelling. *See, e.g.*, *United States v. Hardy*, No. 11 Cr. 629-5 (CS), 2020 WL 7711676, at *2 (S.D.N.Y. Dec. 29, 2020) ("This Court and others have declined to find 'extraordinary and compelling circumstances' in cases where a defendant has a prior COVID-19 diagnosis."); *O'Bryant*, 2022 WL 17168192, at *3 (same); *United States v. Delorbe-Luna*, No. 18 Cr. 384 (VC), 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release.").

Geraldo's concern about the dire consequences to him from what would be a second bout of COVID-19, Def. Rep. at 2, is thus speculative. It also ignores the present state of the pandemic. In the months immediately after the pandemic struck in March 2020, numerous

courts, including this, found or assumed extraordinary and compelling circumstances to exist where a defendant's underlying respiratory or other medical conditions exposed them to a heightened risk of death or grave suffering from COVID-19, which was then taking lives on an alarming scale.[2] But today, with the benefit of vaccinations and deeper medical knowledge and experience as to the contexts in which the pandemic presents a grave threat to health, a more substantial showing must be made to establish extraordinary and compelling reasons so as to secure relief, as the case authority above reflects. Geraldo has not made such a showing.

*Second*, even assuming such circumstances existed, the § 3553(a) factors would not justify a reduced sentence. At sentencing, the Court expanded at length on why those factors required the lengthy sentence imposed. The predominant reason was the gravity of Geraldo's offenses: the savage slaughter of Salgado in which Geraldo participated and about which he bragged afterwards, and his other violent attacks in service of the BTG, including a stabbing later in 2010. *See* Sent. Tr. at 53. The sentence imposed, the Court also noted, reflected the interests in deterrence and the need to impose a sentence consistent, all factors considered, with those of Geraldo's BTG codefendants. *See id*.

Geraldo is to be commended for his forward strides educationally since then, including obtaining a GED and an associate's degree. At sentencing, the Court recognized Geraldo for his

---

[2] *See, e.g.*, *United States v. Wilson*, 16 Cr. 317 (PAE), Doc. No. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heightened vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 482 F. Supp. 3d 151, 157 (S.D.N.Y. 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, 469 F. Supp. 3d 175, 180 (S.D.N.Y. 2020) (same); *United States v. Brown*, 467 F. Supp. 3d 209, 213 (S.D.N.Y. 2020) (same); *United States v. Jasper*, No. 18 Cr. 390-18 (PAE), 2020 WL 1673140, at *2 (S.D.N.Y. Apr. 4, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence).

attempts—as of then, not yet successful—to obtain a GED and to master English, as well as for his positive personal attributes and the mitigating aspects of his life history, as attested to in letters from family and friends. *Id*. at 51–53. The Court's hope was that Geraldo would follow through on his promise to pursue self-improvement. It is encouraging that he appears to have done so. The letters Geraldo has submitted from his family also attest to his forward progress and to his family's willingness to assist his transition into society upon release from prison. *See* Def. Mem at 43–63.

Nonetheless, the sentence imposed was largely driven by the extraordinary savagery and horror of Gerald's retaliatory crimes, which entailed brutally taking an innocent life, reveling in it, and then committing in its wake a series of other brutal attacks, all in the service of a violent gang. The Court recognized at sentencing that Geraldo was apt to mature and present a reduced danger to the public over time, but nonetheless determined that the interest in just punishment and assuring that the sentence fit the crime demanded the sentence imposed. The Court's assessment today of the § 3553(a) factors, in totality, remains the same. A lesser sentence than that imposed would not adequately respect these interests, particularly the central one of just punishment.

For these reasons, the Court denies Geraldo's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: March 21, 2023
      New York, New York