UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| -v- | 11 Cr. 1032 (PAE) |
| MANUEL GERALDO, | OPINION & ORDER |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* motion for compassionate release by defendant Manuel Geraldo—his second—pursuant to 18 U.S.C. § 3582(c)(1).  Geraldo is held at Devens Federal Medical Center in Massachusetts.  For the reasons that follow, the Court denies the motion.

## I.      Background

The background to Gerardo's present motion is set out in detail in materials including Geraldo's April 1, 2015 presentence report, Dkt. 1668 ("PSR"); the Court's July 30, 2015 decision resolving issues litigated at a July 2015 *Fatico* hearing involving the murder of Orlando Salgado, Dkt. 1761 ("*Fatico* Decision"); the Government's October 27, 2015 sentencing letter, Dkt. 1798 ("G. Sent'g Ltr."); the transcript of Geraldo's October 29, 2015 sentencing hearing, Dkt. 1821 ("Sent'g Tr."); the Court's January 21, 2021 decision denying Gerald's *pro se* petition to vacate his sentence pursuant to 28 U.S.C. § 2255, Dkt. 2574 ("2255 Decision"); the Court's March 21, 2023 decision denying Geraldo's initial *pro se* compassionate release motion, Dkt. 2678 ("CR Decision"); Geraldo's present compassionate release motion, filed January 14, 2026, Dkt. 2794 ("CR Mot."); and the Government's January 31, 2026 memorandum in opposition to that motion, Dkt. 2796 ("G. Mem.").

### A.    Geraldo's Offense Conduct, Guilty Plea, and *Fatico* Hearing

Geraldo was a member of the Bronx Trinitarios Gang (the "BTG" or "Trinitarios"), a violent gang that from 2003 to 2011 dominated and terrorized a portion of the northwest Bronx, and whose conduct was characterized by senseless and brutal retaliatory violence against real or perceived rivals. The prosecution brought under this docket number came to cover 81 gang members and affiliate defendants, who collectively committed approximately a dozen murders and countless stabbings, beatings, and other acts of violence, while selling a formidable array of drugs, including heroin, crack, and powder cocaine, in an open-air drug market.

Geraldo's most serious crime in connection with the Trinitarios entailed participating in the March 19, 2010 murder of Orlando Salgado. The facts of the murder, which were developed at an evidentiary *Fatico* hearing in advance of Geraldo's sentencing, revealed that it was carried out in response to an attack earlier that day on a BTG member, Hargelis Vargas, by a member of the rival Latin Kings gang. Several BTG members, including Geraldo, agreed to retaliate and, armed with knives, a hammer, and a metal pipe, climbed into a van together. Vargas identified a man walking on the street, Raymond Hernandez, as his assailant. Hernandez ran away, but Salgado, who had been walking with him, and who had no known gang connection or antipathy to the BTG, did not. The BTG members attacked him, stabbing him and hitting him in the head with the hammer and the metal pipe. Geraldo was among the stabbers. The group drove away. Geraldo later bragged that he had "stabbed a guy to death." In 2010, Geraldo participated in other acts of violence with the BTG. These included beating and stabbing victims in a violent altercation in April 2010; assaulting rival drug dealers with bottles and a cane in summer 2010, in which a fellow assailant carried a gun; and shooting and stabbing members of the rival FOB gang, one of whom Geraldo stabbed and seriously injured, in September 2010.

On February 6, 2013, Geraldo, along with dozens of other BTG members and affiliates, was charged in a superseding Indictment.  The 10 counts that named Geraldo included racketeering, racketeering conspiracy, and various counts related to the Salgado murder and two attempted murders.

On December 9, 2014, Geraldo pled guilty to participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).  In his plea allocution, Geraldo admitted both to participating in the Salgado murder and to stabbing a member of the FOBs some six months later, so as to enhance his standing in the gang.  Under the plea agreement, the parties agreed to have a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), on whether the Salgado murder qualified as first- or second-degree murder, and therefore whether Geraldo's guideline range was 324–405 months (as the Government urged) or 210–262 months (as Geraldo urged) in prison.  Two codefendants of Geraldo, who had also participated in the murder, pled guilty to the same offense under plea agreements reserving the same issue.

The hearing was held on July 13, 2015 and resulted in an opinion and order issued July 30, 2015.  The Court there found the Salgado murder, although presenting a close question, to be a second-degree murder, because although the retaliatory attack had been premeditated, the murder had not been, thus triggering the lower of the alternative guideline ranges for each defendant.  *Fatico* Decision at 1, 7–11.  However, the Court stated:

> [T]he murder falls close to the line between first and second degree.  And the facts established at the *Fatico* hearing reflect extremely negatively on all three defendants awaiting sentencing.  They reflect bloodthirstiness and savagery.  These facts are highly relevant to several § 3553(a) factors, including "the nature and circumstances of the offense," "the need for the sentence imposed to reflect the seriousness of the offense," and the need "to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a).  The Court is therefore seriously considering imposing an above-guideline sentence for the defendants involved in the Salgado murder.

*Id*. at 11.

### B.    Geraldo's Sentencing and Appeal

Consistent with the above assessment, the Court, at the November 24, 2015 sentencing, sentenced Geraldo to, *inter alia*, 320 months' imprisonment, predominantly on account of the gravity of his offense.  The Court noted that Geraldo's crime "could scarcely be more serious," that he had "personally participated in several brutal acts of violence," and that "[a]s a matter of just punishment, the premeditation of the attack, the viciousness and bloodthirstiness of the attack, the desire to inflict injury on someone, anyone, and the pride [Geraldo] took in it," demanded "a very long sentence."  Sent'g Tr. at 40–42.  As to other § 3553(a) factors, although Geraldo had not had a substantial prior criminal record, there was also some interest in specific deterrence, because he had "kept on committing acts of violence," aware that he could get "caught, arrested, and prosecuted," as had happened to other BTG members.  *Id.* at 47.  There was also some interest in public protection, given Geraldo's "track record," which appeared to reveal "an attraction to violence," *id.* at 48, with the qualifications that Geraldo's offenses had been committed with the Trinitarios, and that, upon release as an older man, he would no longer be at an age when young men "are most apt to act recklessly and impulsively," *id*. at 48–49.

Geraldo appealed his sentence as procedurally and substantively unreasonable.  In April 2017, the Second Circuit affirmed in a summary order.  *See United States v. Geraldo*, 687 F. App'x 101, 109 (2d Cir. 2017).

### C.    Geraldo's § 2255 Motion

Geraldo later filed a § 2255 petition, in which he claimed ineffective assistance of counsel with respect to his decision to plead guilty and with respect to his sentencing.  On January 21, 2021, the Court denied the petition.  On January 13, 2022, the Second Circuit

dismissed Geraldo's appeal of that decision, finding that Geraldo had not made a substantial showing of the denial of a constitutional right. *Geraldo v. United States*, No. 21-503, 2022 WL 1230554, at *1 (2d Cir. Jan. 13, 2022).

### D.    Geraldo's First Compassionate Release Motion

On August 11, 2021, during the COVID-19 pandemic, Geraldo filed a motion for compassionate release. He noted that he had been diagnosed with a sickle cell trait and stated that he was at a higher risk of suffering from a severe disease were he to contract COVID-19; that inmates were at greater risk of contracting COVID-19; and that he had taken extensive courses in prison, earning a GED and an associate's degree, and did not have a disciplinary record there. On April 22, 2022, the Government filed a response opposing release. On May 5, 2022, Geraldo replied.

On March 21, 2023, the Court denied Geraldo's motion, for two reasons.

First, the Court did not find extraordinary and compelling circumstances sufficient to justify a reduction of sentence. Although Geraldo claimed a "sickle cell trait," that is a mere genetic predisposition; Geraldo had not been diagnosed with a sickle cell disease and did not claim to have experienced any symptoms. And having a sickle cell trait was not included in the Centers for Disease Control's list of illnesses that put a person at higher risk from severe illness from COVID-19. Geraldo had also been fully vaccinated against COVID-19 and had successfully recovered from his one, largely asymptomatic, COVID-19 diagnosis. Geraldo's circumstances thus fell well short of the standards reflected in the case law for a sentence reduction based on COVID-19, which largely had been granted prior to the availability of vaccines. *See* CR Decision at 6–8.

Second, even assuming such circumstances existed, the Court found, the § 3553(a) factors would not justify a reduced sentence. At sentencing, it had expanded at length on why those factors required the lengthy sentence imposed. The predominant reason was the gravity of Geraldo's offenses: the savage slaughter of Salgado in which Geraldo participated and about which he bragged afterwards, and Geraldo's other violent attacks in the service of the BTG, including a stabbing later in 2010. The sentence also reflected the interests in deterrence and the need to impose a sentence consistent, all factors considered, with those of Geraldo's BTG codefendants. Geraldo's educational progress in prison was commendable and was consistent with the Court's expressed expectation at sentencing—based on Geraldo's strides to that point— that he would pursue self-improvement. But these did not disturb the need for a lengthy sentence, which "was largely driven by the extraordinary savagery and horror of Geraldo's retaliatory crimes, which entailed brutally taking an innocent life, reveling in it, and then committing in its wake a series of other brutal attacks, all in the service of a violent gang." *Id.* at 9. The Court found that a sentence below that imposed would not adequately respect the § 3553(a) factors, in totality, particularly the central factor of just punishment.

### E. Geraldo's Second Compassionate Release Motion

On July 30, 2024, Geraldo submitted a second motion for sentence reduction under § 3582(c). He argues that such relief is warranted based on his youth and ADHD diagnosis at the time of his offense, and based on the length of his sentence. On January 31, 2026, the Government responded.

## II. Applicable Legal Standard

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on

the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of

the defendant's facility," the Court may reduce such defendant's sentence if it finds that

"extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A).

The defendant bears the burden of proving he is entitled to compassionate release.  *See United*

*States v. Fernandez*, 104 F.4th 420, 427 (2d Cir. 2024).

     Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release

motions, and required the BOP to seek such release on their behalf.  *See United States v.*

*Brooker*, 976 F.3d 228, 231 (2d Cir. 2020).  However, "[a]s part of the First Step Act of 2018,

Congress authorized courts to reduce a term of imprisonment upon motion by a defendant."

*United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).  Although Congress tasked

the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary

and compelling to justify a reduction in sentence, before November 1, 2023, the Sentencing

Commission's only guidance on this point had been promulgated prior to the enactment of the

First Step Act.  *See Brooker*, 976 F.3d at 231–34 (quoting 28 U.S.C. § 994(t)).  The Second

Circuit therefore held that this guidance applied only to "those motions that the BOP has made"

and not "to compassionate release motions brought by defendants."  *Id.* at 235–36.  Thus,

through November 1, 2023, when assessing a motion brought by an imprisoned defendant and

not the BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of

extraordinary and compelling reasons and could "consider the full slate of extraordinary and

compelling reasons that an imprisoned person might bring before [it] in motions for

compassionate release."  *Id.* at 237.

     Effective November 1, 2023, however, the Sentencing Commission amended the

Guidelines to also cover defendant-initiated motions.  *See generally* U.S. Sent'g Comm'n,

Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The

amended guidance from the Commission as to what constitute extraordinary and compelling

reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, singly or in

combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id*. § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided" in prison and "without which the defendant is at risk of serious health deterioration or death," *id*. § 1B1.13(b)(1)(C). Medical circumstances may also be extraordinary and compelling where the defendant is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency," where "due to personal health risk factors and custodial status," the defendant is at greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id*. § 1B1.13(b)(1)(D).

- *Age of the defendant.* The defendant's age may support a sentence reduction where he "is at least 65 years old," is "experiencing a serious deterioration" in health due to aging, and has served at least 10 years or 75 percent of his sentence. *Id.* § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *Id*. § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual or physical abuse resulting in serious bodily injury and "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," this may support a sentence reduction. *Id*. § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves, or when considered with the above circumstances, are similar in gravity to those above, such may support a sentence reduction. *Id*. § 1B1.13(b)(5).

- *Unusually long sentence plus change in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines

8

Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason. *Id.* § 1B1.13(b)(6).

As to the defendant's rehabilitation, § 1B1.13 states that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," but rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* § 1B1.13(d).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

## III.    Discussion

Geraldo argues that his youth and ADHD at the time of his offense, and his unusually long sentence, justify a sentence reduction. The Government does not dispute that Geraldo has exhausted his administrative remedies. But, it argues, as with Geraldo's first § 3582(c) motion, the circumstances on which he relies do not establish extraordinary and compelling reasons for a sentence reduction; and even if they did, the § 3553(a) factors would not support a reduced sentence. The Government is correct on both points.

Geraldo's youth and ADHD at the time of his offense do not supply a basis for sentence reduction. These characteristics, in fact, were fully taken into account at sentencing. Geraldo's sentencing submission extensively addressed these points. It discussed each under a separate header, supplied documentation of the ADHD diagnoses, and canvassed case law supporting treating a defendant's youth as mitigating. *See* Dkt. 1781 at 4–13. And the Court, in turn, acknowledged these factors, in explaining its evaluation of the sentencing factors, including "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court recognized that, in light of Geraldo's having been a young adult at the time of his offense, by the time of his

9

release, it was possible he "will have gained the maturity and self-control that comes with adulthood," Sent'g Tr. at 47, such that the public interest in Geraldo's incapacitation might reduce over time, *id*. at 48. The Court stated, in fact, that had Geraldo been older when he committed the offense, the sentence it would have imposed would have been materially longer. *Id*. at 50. Because these factors were fully considered at the time of sentencing, they do not support a reduction of sentence, let alone qualify as extraordinary and compelling reasons for such relief. *See, e.g.*, *United States v. Coleman*, No. 22-636, 2023 WL 3589899, at *2 (2d Cir. May 23, 2023) (summary order) (affirming denial of § 3582(c) motion where district court found that "the same mitigating factors previously considered at [defendant's] sentencing—considered again in connection with his motion for a sentence reduction—did not constitute extraordinary and compelling circumstances warranting release"); *United States v. Muntslag*, No. 13 Cr. 635, 2022 WL 255347, at *4 (S.D.N.Y. Jan. 25, 2022) (denying § 3582(c) motion where court already considered same mitigating factors at sentencing); *United States v. Pinto-Thomaz*, 454 F. Supp. 3d 327, 330–31 (S.D.N.Y. 2020) (same).

The length of Geraldo's sentence also does not support a sentence reduction. As the Court explained at length, the sentence was lengthy largely because of the gravity of Geraldo's crimes, which entailed participation in a vicious retaliatory murder and repeated other acts of violence. *See* Sent'g Tr. at 40–42, 53. The Court's decision following the *Fatico* hearing had, in fact, emphasized the point, explaining that while the Salgado murder narrowly qualified as a second-degree murder because the murder itself was not premeditated, the attack on Salgado was both brutal and premeditated. *Fatico* Decision at 10–11. Geraldo's sentence is readily compatible with those of co-defendants in this case—and with those of defendants in other cases in this District who pled guilty to participating in murders in support of violent gangs. Geraldo's

10

attempt to relitigate the sentence that the Court imposed and carefully explained does not justify a sentence reduction.

Even assuming that the facts which Geraldo cites supplied a legally adequate basis for early release, the Court would still deny the application. That is because, as the Court explained in denying Geraldo's first such motion, the § 3553(a) factors, in combination, continue to favor the sentence imposed.

At sentencing, the Court expanded at length on why those factors required that sentence. The predominant reason was the gravity of Geraldo's offenses: the savage slaughter of Salgado in which he participated and about which he bragged afterwards, and his other violent attacks in the service of the BTG, including a stabbing later in 2010. *See* Sent'g Tr. at 53. The sentence imposed, the Court also noted, reflected the interests in deterrence and the need to impose a sentence consistent, all factors considered, with those of Geraldo's BTG codefendants. *Id.* at 39, 45–48. The Court took into account mitigating factors, including Geraldo's youth, ADHD, post-arrest educational strides, and the positive personal attributes to which letters from his family and friends had attested. *Id.* at 49–53. At bottom, however, the sentence imposed was largely driven by the extraordinary savagery and horror of Gerald's retaliatory crimes, which entailed brutally taking an innocent life, reveling in it, and then committing in its wake a series of other brutal attacks, all in the service of a violent gang. For that reason, even recognizing that Geraldo was apt to mature and present a reduced danger to the public over time, the Court determined that the interests in just punishment and assuring that the sentence fit the crime demanded the sentence imposed. The Court's assessment today of the § 3553(a) factors, in totality, remains the same. A lesser sentence than that imposed would not adequately respect these interests, particularly the central one of just punishment.

11

For these reasons, the Court denies Geraldo's second motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (release permissible only if compatible with § 3553(a) factors); *see also United States v. Jordan*, No. 18 Cr. 834 (PAE), 2025 WL 3154433, at *7–8 (S.D.N.Y. Nov. 12, 2025) (§ 3553(a) factors, considered "in combination," disfavored early release); *United States v. Del Rosario*, No. 12 Cr. 81 (PAE), 2024 WL 5054912, at *6–7 (S.D.N.Y. Dec. 10, 2024) (similar); *United States v. Butler*, No. 18 Cr. 834-10 (PAE), 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (similar); *United States v. Wright*, No. 15 Cr. 445-3 (PAE), 2022 WL 134870, at *5 (S.D.N.Y. Jan. 13, 2022) (similar); *United States v. Hope*, 464 F. Supp. 3d 646, 650 (S.D.N.Y. 2020) (similar).

## CONCLUSION

For the reasons stated above, the Court denies Geraldo's motion for a reduction of sentence. The Clerk of Court is respectfully directed to terminate the motion pending at docket 2748.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: May 13, 2026
      New York, New York

12